## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
### Wheeling Division

**RICHARD C. BREIDING,**

        **Plaintiff,**

**v.**                                         **Civil Action No. 5:21-cv-46**
                                                     **(Bailey)**

**CREDIT ONE BANK, N.A. and**
**TRANS UNION LLC,**

        **Defendants.**

### AMENDED COMPLAINT

    COMES NOW Plaintiff, RICHARD C. BREIDING, by and through his undersigned Counsel, and alleges the following against Defendants CREDIT ONE BANK, N.A. (hereafter "Credit One"), and TRANS UNION LLC (hereafter "Trans Union"):

### PRELIMINARY STATEMENT

    1.    This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x, and the Equal Credit Opportunity Act ("ECOA") 15 U.S.C. § 1691 et seq.

    2.    Today in America there are three major consumer reporting agencies, Equifax Information Services, LLC (hereinafter "Equifax"), TransUnion, LLC (hereinafter "TransUnion") and Experian (hereinafter "Experian").

    3.    The FCRA demands of reporting agencies like Equifax, Experian, and Trans Union that they utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

3.      Consumer reporting agencies that create consumer reports, like TransUnion, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Credit One, particularly where a consumer makes a dispute about information reported.

4.      Also when a consumer like Plaintiff disputes the accuracy of information through the agencies, those disputes are transmitted to the party furnishing the information, here Credit One.  The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.      Plaintiff brings claims under Section 1681e(b) against the credit reporting agency Trans Union because it reported about Plaintiff inaccurate information regarding a Credit One account. When Plaintiff disputed the inaccuracies, the agency did not reasonably investigate, also violating Section 1681i.

6.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how the CRA Defendants have not complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. The CRA Defendants have been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had Trans Union followed that advice and heeded those warnings, Plaintiff would not have been harmed.

7.     Likewise, Credit One violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from the agencies and failed to reasonably investigate those disputes. Instead, discovery will show all Credit One did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting.

8.     Finally, Credit One violated the ECOA by taking an adverse action against Plaintiff's credit card account without sending him the required notice about its action.

## JURISDICTION AND VENUE

9.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p), 15 U.S.C. § 1681e(c), and 28 U.S.C. § 1367.

10.     Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District and Division.

## PARTIES

11.     Plaintiff Richard C. Breiding is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.     Credit One, N.A., a foreign corporation that does business in the State of West Virginia.

13.     Credit One is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2, and is a "creditor" as defined and governed by the ECOA, 15 U.S.C. § 1691a(e).

14.     Defendant Trans Union LLC ("Trans Union") is headquartered in Illinois and does business in the State of West Virginia through its registered agent located in Charleston, West Virginia.

15.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f),

and it disburses consumer reports to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the CRA Defendants' Creditor-Customers*

16.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer

reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement

of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress

adopted a variety of measures designed to insure that agencies report accurate

information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In

recognition of the critical role that CRAs play in the credit markets and the serious consequences

borne by consumers because of inaccurate information disseminated in consumer credit reports

prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties

of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v.

Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar.

18, 2011).

17.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a
consumer report it shall follow reasonable procedures to assure maximum possible
accuracy of the information concerning the individual about whom the report
relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D.

Va. Mar. 18, 2011).

18.     Section 1681i(a), on the other, hand requires much more from a CRA after a

consumer has placed it on notice of an inaccuracy through her dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

19.    Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

20.    It has long been the law that a CRA, such as TransUnion, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item.  *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

21.     That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).

22.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

23.     Further, as Trans Union js aware, even though the term "investigation" is not used in § 1681e(b), it has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that a reasonable investigation is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

24.     It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

26.    Today, furnishers such as Credit One and other Trans Union's furnishers, have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.  But while Trans Union's duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### Plaintiff Discovers the CRA Defendant Was Inaccurately Reporting a Bankruptcy on his Credit One Account

26.    Sometime in September 2019, Plaintiff applied for a mortgage to purchase a home. Thereafter, Plaintiff learned that Credit One was reporting a bankruptcy on his account.

27.    This information was blatantly false, as Plaintiff had never filed for bankruptcy.

28.    A subsequent check of Plaintiff's consumer reports revealed that TransUnion was the CRA reporting a bankruptcy about his Credit One account.

### Plaintiff Disputes the Inaccuracies With The CRAs

29.    Having learned that Credit One inaccurately reported the status of his Credit One account to this CRA Defendant, Plaintiff sent a dispute to Trans Union to attempt to have it remove the inaccuracies from his credit report.

30.    Plaintiff sent correspondence to Trans Union, requesting that Trans Union verify and correct the inaccurate, erroneous and unverified representations made by Credit One on his credit file.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

31.     In that letter, Plaintiff explained that Trans Union's reporting of a bankruptcy on the Credit One account was inaccurate.  Plaintiff advised that the bankruptcy attributed to him was false.

32.     Subsequent to Plaintiff's disputes, Trans Union failed to remove the inaccurate information regarding the Credit One account contained within Plaintiff's credit report.

### The CRA Defendant Did Not And Does Not
### Conduct Any Investigation Of Most Consumer Disputes

33.     Unknown to Plaintiff until this lawsuit, it has long been the practice of Trans Union to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas. Defendant uses the vendor, previously known as Intelenet Global Services and now as Teleperformace.

34.     This dispute processing vendor is not hired to perform an actual FCRA investigation.  Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

35.     In fact, the CRA Defendant strongly encourage consumers to make disputes through its online website.  When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account.").  The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at TransUnion. It gets sent to Defendant's creditor customer (such as Credit One) for its sole review and consideration.

36.     Here is how the written mail dispute process actually works:  TransUnion receives and scans the mail into batches directly out of its facility in Eastern Pennsylvania.

37.     Trans Union then forwards the dispute mail batches to the same third-party, Teleperformance, based in Mumbai, India. Teleperformance uses low-wage employees to work

quickly to process the consumer dispute letters received from the Atlanta-based mail company, skimming the letters and selecting one of a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits. For example, the most common relevant code is: "01 Not his/her."

38.     Teleperformance agents are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

39.     Trans Union has taken the position in other litigation that it has no control over the Teleperformance employees. *See, e,g.*, *Wilcox v. Servis One, Inc*., No. 1:19-cv-02545-RDB (D. Md.), ECF 71 (ruling that TransUnion did not have control or the ability to produce for deposition Indian employees of Intelenet).

40.     Regardless of whether their position is correct, Trans Union believes it cannot direct, control, manage or reliably influence the employees of its third-party Indian outsource vendor.

41.     Trans Union itself did not conduct any reinvestigation of Plaintiff's dispute. Instead, it merely caused it to be removed from its control to be saved within a database by an overseas data-processing vendor, who is given access to all of Plaintiff's credit information.

### The CRA Defendant Forwarded Plaintiff's Dispute to Credit One, Who Did Nothing

42.     When Plaintiff disputed the Credit One account with Trans Union, it forwarded Plaintiff's dispute to Credit One using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results sent back to CRAs.

43.     E-Oscar is also the system by which Credit One has agreed it will accept such consumer disputes from the CRAs.

44.     Under such circumstances, Credit One became obligated under the FCRA to investigate Plaintiff's disputes.

45.     Despite Plaintiff's dispute to Credit One to attempt to have it reinvestigate his complaints, Credit One continues to report the derogatory history regarding Plaintiff.

46.     Credit One failed to reinvestigate Plaintiff's complaints.

47.     The information furnished by Credit One to Trans Union about a bankruptcy by Plaintiff was at all times inaccurate.

48.     On or about a date better known to Trans Union and Credit One, TransUnion furnished Plaintiff's dispute to Credit One.

49.     Credit One failed to reasonably reinvestigate Plaintiff's disputes that Credit One received from Trans Union in violation of § 1681s-2(b)(1)(A) of the FCRA.

50.     Defendant Credit One further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information for a period of time subsequent to receiving Plaintiff's dispute from Trans Union and prior to the commencement of this action.

51.     Trans Union responded to Plaintiff's initial dispute, claiming the information was reported verified as accurate and the information was updated. This response confirms that TransUnion communicated Plaintiff's dispute to Credit One.

52.     By its actions as described herein, Credit One communicated false credit information that Plaintiff had filed for bankruptcy.

***Plaintiff Suffered Actual Harm***

53.     Defendants Trans Union and Credit One have continued to report the derogatory Credit One account on Plaintiff's credit report, despite being notified that this information was false.

54.     Plaintiff has been attempting to resolve these matters with Defendants and his credit was significantly destroyed by Defendants' failure to correct the inaccurate reporting.

55.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    a.  Stress associated with denials for a mortgage and delays in applying for future lines of credit;

    b.  Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes;

    c.  Loss of time attempting to cure the error;

    d.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

56.     Stress associated with attempting to resolve this matter in the last year.

***Defendants' Conduct Was Willful***

57.     The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the

company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

58.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

59.     As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed.  The CRA Defendant's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

60.     The CRA Defendant has received many thousands of disputes and other complaints regarding the creditors at issue in this case—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

61.     Trans Union knew or should have known of this litigation history.  It uses and has access to PACER to investigate and monitor such consumer complaints.

62.     Furthermore, it has access to all bankruptcy actions filed in the United States and knew or should have known that Plaintiff had never filed for bankruptcy.

63.     Additionally, none of Plaintiff's other creditors were reporting any bankruptcy by Plaintiff.

64.     Thus, Trans Union reported a bankruptcy it knew or should have known had never happened.

65.     Consequently, reporting the bankruptcy in the first instance resulted from a failure to adopt reasonable procedures to ensure maximum possible accuracy.

66.     That failure by Trans Union was willful.

67.     The CFPB has maintained a Consumer Complaint database since 2017.  It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

68.     Defendant Trans Union regularly receives unredacted consumer dispute details from this database.

69.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Trans Union.

70.     Further, just shy of 38,000 complaints against TransUnion were based largely on their failure to reasonably investigate consumer disputes.

71.     Credit One has approximately 17 such complaints regarding its credit reporting.

72.     Just in the last 12 months alone, TransUnion has been sued by consumers alleging violation of the FCRA over 2,000 times. Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute.  This complaint history has been true for nearly every year over the last decade.

73.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendant on notice of the failures of their dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRA Defendant on notice that it may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

74.     TransUnion has long been on clear notice that its dispute investigation procedures are inadequate. The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA

does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a TransUnion case almost a quarter-century ago. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).  TransUnion's notice was so substantial that one District Court later instructed the jury in a § 1681i(a) trial about this history:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed . . . that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, CIV. 3:05-cv-888 (E.D. Va. Aug. 27, 2007).

75.    Defendant has also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

76.    In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendant by which it was required to develop procedures necessary to comply with the FCRA.[2]  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).

77.    The AG Settlement also required the CRA Defendant to conduct significant research and data gathering—even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case.  Notwithstanding these requirements, Trans Union did not meaningfully comply with the AG Settlement in these regards.

78.    Trans Union is also aware of substantive and detailed criticism by public interest groups about their automated dispute system.  For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading egal treatise in this field, also

---

[2] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

published a scathing research paper detailing the actual process followed by Defendant when a consumer makes a dispute.  That report was updated in 2019.  AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[3]

79.    The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

80.    Among many of the Defendant's accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**.  Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two or three digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

---

[3] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

81.     Despite the notice and judicial, regulatory and public interest criticism, Trans Union has refused to change its dispute investigation process because it would cost too much money to do so.

82.     Trans Union's procedures imposed on Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

83.     As for Credit One, it knew that no bankruptcy had been filed and it knew it should have corrected its reporting.

84.     Its failure to make that correction was willful.

85.     Furthermore, instead of correcting its error, it terminated Plaintiff's account with it.

86.     It never provided any adverse action notice to Plaintiff about the reasons for this termination.

87.     Its failure to provide an adverse action notice was also willful.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I**
**Violation of § 1681e(b) of the FCRA – Against Trans Union**

88.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

89.     Defendant Trans Union willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning Plaintiff.

90.     As a result of this conduct, action and inaction of TransUnion, Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

91.     Further, after Plaintiff's detailed dispute put it on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, TransUnion ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit report.

92.     Defendant furnished multiple consumer reports to third parties containing the inaccurate tradeline information and Defendant did so after receiving notice of these inaccuracies.

93.     Trans Union's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94.     As a result of Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

95.     Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**Violation of § 1681i of the FCRA – Against Trans Union**

96.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

97.     TransUnion willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

98.     Further, Trans Union violated Section 1681i by conducting *no investigation at all*. Section 1681i demands that when Plaintiff notified each CRA directly of his disputes, that party— the consumer reporting agency who received the disputes—must investigate those disputes. The statute does not contemplate someone other than Trans Union conducting the investigation.

99.     Yet, Trans Union used an unrelated third-party, Teleperformance, over which the CRA has control, to conduct its investigations. Teleperformance is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Trans Union therefore violated 1681i on this basis because they sent Plaintiff's disputes away to a company that was not their controlled agent rather than investigating them as required.

100.    As a result of this Defendant's violations of 15 U.S.C. § 1681i, Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

101.    This Defendant's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

102.    Plaintiff is entitled to recover costs and attorneys' fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**Violation of § 1681s-2(b)(1)(A) of the FCRA – Against Credit One**

103.    Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

104.    Defendant Credit One violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's dispute after said dispute was furnished to Credit One by Trans Union.

105.    As a result of this conduct, action and inaction of Credit One, Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

106.    Credit One's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

107.    Plaintiff is entitled to recover costs and attorneys' fees from Credit One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**Violation of § 1681s-2(b)(1)(E) of the FCRA – Against Credit One**

108.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

109.    Defendant Credit One violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from Trans Union and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from Credit One's failure to investigate as articulated herein, after Credit One received notice of Plaintiff's dispute from TransUnion.

110.    As a result of this conduct, action and inaction of Credit One, Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

111.    Credit One's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

112.    Plaintiff is entitled to recover costs and attorneys' fees from Credit One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT V**
**Violation of § 1691(d) of the ECOA – Against Credit One**

113.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

114.    Defendant Credit One violated the ECOA and Regulation B by not providing Plaintiff with any notice of the adverse action it took when it terminated his credit card account.

115.    As a result of this ECOA violation, Plaintiff suffered actual damages, including but not limited to, the loss of his rights to information about the action taken on his credit card account and the reason for those actions, loss of time, and inconvenience and other distress related to trying to determine what happened to his account, and the inability to provide further documentation to support his dispute about the inaccurate credit reporting.

116.    Credit One's conduct, action and inaction renders it liable for actual and statutory punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1691e.

117.    Plaintiff is entitled to recover costs and attorneys' fees from Credit One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1691e(d).

## JURY DEMAND

118.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief of Credit One being required to accurately report his account; and such other relief the Court deems just and proper.

Dated April 1, 2021                          Respectfully Submitted,

                                             RICHARD C. BREIDING,

                                             By:    /s/ Amy L. Austin
                                             Amy L. Austin, Esq. (WV Bar #6286)
                                             CONSUMER LITIGATION ASSOCIATES, P.C.
                                             626 East Broad Street, Suite 300
                                             Richmond, VA. 23219
                                             804.905.9900 Telephone
                                             804.905.9902 Facsimile
                                             Email:  amyaustin@clalegal.com

Thomas McIntire, Esq. (WV Bar #2471)
82 1/2 Fourteenth St.
Wheeling, West Virginia  26003
Phone: (304) 232-8600
Fax:     (800) 890-7276
Email: tom@mcintirelaw.com
**Attorneys for Plaintiff, Richard C. Breiding**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling Division**

**RICHARD C. BREIDING,**

   **Plaintiff,**

**v.**             **Civil Action No. 5:21-cv-46**
              **(Bailey)**

**CREDIT ONE BANK, N.A. and**
**TRANS UNION LLC,**

   **Defendants.**

## CERTIFICATE OF SERVICE

   I hereby certify that a true and exact copy of Plaintiff's Amended Complaint was served electronically through the Court's CM/ECF system and mailed this 1st day of April 2021 to the following:

Heidi E. Siegmund, Esq.
Jarrod D. Shaw, Esq.
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
*Counsel for Credit One Bank, N.A.*


Trans Union LLC
Prentice Hall Corporation System Inc
209 West Washington Street
Charleston, WV 25302

          */s/ Thomas E. McIntire, Esq.*
          Thomas E. McIntire (WVSB #2471)