## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## Wheeling Division

| | |
|---|---|
| **RICHARD BREIDING,** | |
| **Plaintiff,** | |
| v. | Civil Action No.: 5:21-cv-00046 |
| **CREDIT ONE BANK, N.A., and TRANS UNION LLC,** | |
| **Defendants.** | |

## DEFENDANT CREDIT ONE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND COMPEL ARBITRATION

Defendant Credit One Bank, N.A., by counsel, submits this Memorandum of Law in Support of its Motion to Dismiss and Compel Arbitration.

### INTRODUCTION

Richard Breiding is in the wrong forum. When Breiding opened and used the credit card account at issue, he agreed to arbitrate all disputes related to that card and his resulting relationship with Credit One. The Court must therefore dismiss Breiding's claim against Credit One and order Breiding to pursue that claim in arbitration.[1]

### FACTUAL BACKGROUND

On or about May 16, 2019, Breiding completed an online application and opened a credit card account ending in 8932 (the "Account") with Credit One. (Declaration of Gary Harwood ("Credit One Decl.") ¶ 7 Ex. A (screenshot of the information provided by Breiding).) As part of

---

[1] Credit One also expressly reserves its right to assert any and all affirmative defenses and/or statutory or common law defenses available to it.

that online application, Breiding received and agreed to certain terms and conditions, including an arbitration provision. *Id.* ¶ 8 & Ex. B (Application Terms).[2] Those terms state:

> **ARBITRATION**: Your Card Agreement includes an arbitration provision, which restricts your opportunity to have claims related to the account heard in court or resolved by a jury, and to participate in a class action or similar proceeding. Complete details will be in the Card Agreement sent with your card.

*Id.* at 2. Additionally, Breiding certified the application by agreeing to the following:

> If I am approved, my card(s) will be issued and I agree to pay all charges incurred in accordance with the terms and conditions of the Card Agreement or Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Agreement"), which will be sent with my card. I understand that my Account will be subject to the terms and conditions of the Agreement, and that the Bank may change all terms and conditions of the Account upon notice to me in accordance with applicable law.

*Id.*

In response to Breiding's online application, Credit One mailed him a credit card, enclosed in the same envelope as a Visa/Mastercard Cardholder Agreement, Disclosure Statement And Arbitration Agreement (the "Cardholder Agreement"), which governs the account and Breiding's relationship with Credit One. (Credit One Decl. ¶ 9, Ex. C.)

The arbitration provision of the Cardholder Agreement (the "Arbitration Agreement") provides:

> **Arbitration Agreement:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.
>
> **ARBITRATION AGREEMENT**
>
> **PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS**

---

[2] Credit One does not retain actual copies of each set of terms it sends online applicants for credit cards, but does keep sample copies of the terms that applicants receive. *Id.* ¶ 8. The sample is an exact copy of the terms to which Breiding agreed during the application process. *See id.* Ex. B.

This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below.

If you do not reject this agreement to arbitrate, you GIVE UP YOUR RIGHT TO GO TO COURT and controversies or disputes between us will be resolved by a NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, using rules that are simpler and more limited than in a court. Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT. Arbitration will proceed INDIVIDUALLY—CLASS ACTIONS AND SIMILAR PROCEDURES WILL NOT BE AVAILABLE TO YOU.

**Agreement to Arbitrate:**

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the laws of the State of Nevada[…]

**Covered Claims:**

Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account. Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account. Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your Account is closed, you pay us in full any outstanding debt you owe, or you file for bankruptcy. Also, controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

*Id*. Ex. C at 6-7 (emphasis added).

Under the Arbitration Agreement, either party may compel arbitration for any dispute relating to the Account, including disputes about disclosures, collections, and other communications. *Id.* The Arbitration Agreement applies to disputes "based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies." *Id.* And, importantly, the Arbitration Agreement provides that "[a]ny questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." *Id.* In addition, the Cardholder Agreement notified Breiding that "[y]ou accept this Agreement when you use the Account." *Id.* at 2.

Breiding activated his credit card on or about May 28, 2019. (Credit One Decl. ¶ 11.) He made numerous charges to the credit card and payments on the account. *Id*. Ex. D (Breiding's monthly statements). He thus accepted the Cardholder Agreement's terms and conditions. *Id*. ¶¶ 11-12 & Ex. C at 1. The card remained open, and Breiding continued to use it and make payments, for roughly five months. *Id.* Ex. D (Breiding's Monthly Statements).

On March 25, 2021, Breiding filed this action claiming that Credit One violated the Fair Credit Reporting Act ("FCRA") and the Equal Credit Opportunity Act ("ECOA"). (Complaint ("Compl."), ECF No. 1.) Breiding amended his Complaint on April 1, 2021, alleging the same causes of action against Credit One. (First Amended Complaint ("FAC"), ECF No. 6.) Specifically, Breiding alleged that Credit One reported the Account inaccurately to credit reporting agencies and willfully failed to conduct a reasonable investigation of Breiding's disputes, in violation of 15 U.S.C. § 1681s-2(b). (FAC ¶¶ 103-112.) In addition, Breiding alleged that Credit One failed to adequately explain to him its reasons for closing the Account, in violation of 15 U.S.C. § 1691. *Id.* ¶¶ 113-117.

Under the plain language of the Arbitration Agreement, Breiding must pursue these claims in arbitration.

## ARGUMENT

### I. Legal Standard

An arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Accordingly, "'a motion to dismiss based on a forum-selection clause,' such as an arbitration provision, 'should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue.'" *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548 (D. Md. 2019) (quoting *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)); *see also Hayes v. Delbert Servs. Corp.*, 2015 WL 269483, at *1 n.1 (E.D. Va. Jan. 21, 2015) (noting that "an arbitration clause functions as a specialized kind of forum-selection clause" and analyzing a motion to compel arbitration under Fed. R. Civ. P. 12(b)(3)), *rev'd on other grounds*, 811 F.3d 666 (4th Cir. 2016).

Because a motion to compel arbitration is a challenge to venue under Rule 12(b)(3), the Court may consider evidence outside the pleadings. *E.g.*, *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365-66 (4th Cir. 2012). A plaintiff faced with such a challenge bears the burden of establishing that venue is proper. *Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *abrogated on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 125 n.6 (1982).

## II. Breiding's Claim Is Subject To Arbitration.

### A. Federal Law Favors Arbitration.

Under the Federal Arbitration Act ("FAA"),[3] written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This strong language reflects an "'emphatic federal policy in favor of arbitral dispute resolution[.]'" *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 712 (4th Cir. 2015) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The Fourth Circuit has long recognized this policy, and has faithfully complied with the FAA's mandate to "'rigorously enforce agreements to arbitrate.'" *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 ((1985)).

Accordingly, the FAA creates "a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (internal citation omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (observing that "§ 3 [of the FAA] requires courts to stay litigation of arbitral claims pending arbitration . . . § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement'").

---

[3] The FAA governs Breiding's Arbitration Agreement because it was entered in connection with a transaction involving interstate commerce. *See, e.g.*, *Perry v. Thomas*, 482 U.S. 483, 489 (1987); *see also* Credit One Decl. Ex. A.

6

The FAA's policy in favor of arbitration applies with equal force to consumer disputes. "Indeed, arbitration's advantages often would seem helpful to individuals, say complaining about a product, who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995); *see also Concepcion*, 563 U.S. at 338 (2011) (enforcing arbitration provision in contract between consumer and phone company); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000) (enforcing arbitration clause between consumer and lender). Courts in this Circuit have therefore routinely enforced arbitration agreements in consumer disputes, including disputes over credit card accounts. *E.g.*, *Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 728 (E.D. Va. 2012) (ordering arbitration of FDCPA claims related to credit card agreement); *Montgomery v. Credit One Bank, N.A.*, 848 F. Supp. 2d 601, 608 (S.D.W.Va. 2012) (granting motion to compel arbitration under a prior iteration of Credit One's Cardholder Agreement).

Thus, with the FAA's mandate in mind, the Court must determine (1) whether the parties entered into a valid agreement to arbitrate; and (2) whether the specific dispute falls within the scope of the agreement. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001). As discussed below, a valid arbitration agreement exists in this matter, and Breiding's claim against Credit One falls squarely within its scope.

  **B.**  <u>**A Valid and Enforceable Arbitration Agreement Exists.**</u>

Initially, the Court must decide whether a valid agreement to arbitrate exists between the parties. *E.g.*, *Singh v. Interactive Brokers LLC*, 219 F. Supp. 3d 549, 555 (E.D. Va. 2016). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins*, 303 F.3d at 501 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this case, the Cardholder Agreement "is governed by and interpreted in

accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence." (Credit One Decl. Ex. C at 9.) Under either Nevada law or federal law, the Court must honor this choice-of-law provision. *See, e.g.*, *Snow v. Citibank, N.A.*, 2015 WL 799543, at *5 (E.D.N.C. Feb. 25, 2015) (comparing federal common law and state law, and determining that the law of the parties' chosen forum governed the existence and formation of a cardholder's arbitration agreement); *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014) (noting that Nevada gives effect to contractual choice-of-law provisions where the chosen forum has a legitimate connection to the transaction); *Rose v. Chase Manhattan Bank USA*, 2006 WL 1520238, at *2 (D. Nev. May 30, 2006) (upholding cardholder agreement's choice of law provision under Nevada law in the context of a motion to compel arbitration). Therefore, the existence of a valid agreement to arbitrate is a question of Nevada law.

Nevada law, like the FAA, provides that written arbitration agreements are "valid, enforceable and irrevocable except . . . upon a ground that exists at law or in equity for the revocation of a contract." N.R.S. § 38.219(1); *see also* 9 U.S.C. § 2. An agreement to arbitrate, like any other contract, is formed by offer, acceptance, and mutual assent. *E.g.*, *Joyner v. Bank of Am. Home Loans*, 2010 WL 2953969, at *3 (D. Nev. July 26, 2010) (citing *Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955, 956 (Nev. 1978)).

Each of those elements is present here. Breiding received the Cardholder Agreement when he received his credit card. Credit One Decl. ¶¶ 9-10. Therefore, Breiding received notice of the arbitration provision and the Cardholder Agreement enclosed with the credit card before he used the card. *Id.* The Cardholder Agreement unambiguously stated that use of the card would constitute acceptance of the agreement. *Id.* Ex. C at 2. And, importantly, "[a]cceptance of the

agreement by use of the Credit Card, rather than by signing the agreement, is valid under the law." *Mitchell v. Sajed*, 2013 WL 3805041, at *3 (E.D. Va. July 22, 2013) (noting that the "FAA does not require an arbitration agreement be signed by the parties entering the agreement") (internal citations omitted).

Breiding thus accepted the Cardholder Agreement's terms and conditions, including the arbitration provision, by activating and using the credit card. (Credit One Decl. Ex. C at 2, 6-7; Ex. D.) He then continued to use and make payments on the card for several months. (Credit One Decl. Ex. D.) At no time did he attempt to opt out of or reject the Cardholder Agreement or the arbitration provisions. *Id.* ¶ 13. A valid agreement to arbitrate therefore exists under Nevada law.

    **C.**     **Breiding's Claims Against Credit One Fall Within The Scope Of The Arbitration Agreement.**

Generally, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Where the clause is broad, as here, the presumption of arbitrability mandates that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* at 650 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)).

As noted above, the Arbitration Agreement governing the Account provides that:

> Claims subject to arbitration include, but are not limited to, any controversies or disputes *arising from or relating in any way to your Account;* any transactions involving your Account; *any disclosures* made to you concerning your Account; and, if permitted by the rules of the arbitration forum, *any collection of debt* related to your Account. Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account.

(Credit One Decl. Ex. C at 6-7 (emphasis added).)

9

This broad language plainly covers Breiding's claims. Specifically, Breiding contends that Credit One violated the FCRA when it failed to conduct a reasonable investigation and continued to report allegedly inaccurate information about the Account to credit reporting agencies. (FAC ¶¶ 103-112.) He then claims that Credit One failed to adequately disclose its reasons for closing his Account. (FAC ¶¶ 113-117.) And, the Arbitration Agreement expressly notified Breiding that disputes about "disclosures," along with any other disputes "arising from or relating in any way to [his] Account[,]" would be subject to arbitration. (Credit One Decl. Ex. C at 6.) In fact, several courts have already applied the Arbitration Agreement to compel arbitration of similar consumer claims against Credit One. *See, e.g.*, *Burgos v. Trans Union, LLC, et al.*, No. 2:16-cv-6338-JCJ, ECF No. 44 (E.D. Pa. June 28, 2017); *Garrett v. Credit One Bank*, Case No. CV 15-08865-RSWL-PLAx, ECF No. 20 (C.D. Cal. Feb. 29, 2016); *Azizian v. Credit One Bank*, No. 2:15-cv-04715-DSF-Ex, ECF No. 31 (C.D. Cal. Nov. 24, 2015); *Rice v. Credit One Fin.*, 2015 WL 4528933 (E.D.N.C. July 27, 2015).

In sum, Breiding cannot genuinely dispute that his claims against Credit One are related to the Account. Specifically, his claims concern Credit One's credit reporting of that Account and the disclosures it provided (or did not provide) regarding that Account. In other words, he cannot dispute that his claim is within the Arbitration Agreement's scope. The Court must therefore dismiss his claim against Credit One in favor of arbitration.

### D. The Arbitration Agreement Delegates Arbitrability To The Arbitrator.

Nor can Breiding avoid arbitration by contesting the arbitrability of his claims because the Arbitration Agreement delegates such threshold questions to an arbitrator. Specifically, the Arbitration Agreement provides that issues subject to arbitration include:

> controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. Any questions about what Claims are subject to

> arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

(Credit One Decl. Ex. C at 7.)

The Fourth Circuit has held that a prior iteration of this same provision "clearly and unmistakably" delegates the gateway question of arbitrability to the arbitrator. *Novic v. Credit One Bank, N.A.*, 757 F. App'x 263, 266 (4th Cir. 2019) (reversing the district court's denial of Credit One's motion to compel arbitration of FCRA claims). The court reasoned as follows:

> The delegation clause states, in material part, that "[c]laims subject to arbitration include . . . *the application, enforceability or interpretation of* [the cardholder agreement], *including this arbitration provision.*" (emphasis added). This precise language stands in direct contrast to the broad wording of general arbitration provisions that we have rejected as not satisfying the "clear and unmistakable" standard . . . .
>
> In fact, the language in the delegation clause before us is similar in crucial respects to the language of the delegation clause at issue in *Rent-A-Center[, W., Inc. v. Jackson*], 561 U.S. at 68, 71 130 S. Ct. 2772. That delegation clause stated that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . *enforceability* . . . of this" agreement. *Id.* at 68, 130 S.Ct. 2772 (emphasis added) . . . . Thus, both the delegation clause before us, and the delegation clause reviewed by the Supreme Court in *Rent-A-Center*, unambiguously require arbitration of any issues concerning the "enforceability" of the arbitration provisions entered into by the respective parties.

757 F. App'x at 266 (emphases in original).

The same logic dictates the same conclusion here: any question of arbitrability must be left to the arbitrator. Any issues "advanced by [Breiding] . . . are matters for the arbitrator, rather than for a court, to decide." *Id.* at 267.

### III. The Court Should Dismiss Breiding's Claims Or, In The Alternative, Issue A Stay Pending Arbitration.

Upon determining that a dispute is subject to arbitration, a court may either dismiss an action and compel arbitration or stay the proceedings during the pendency of arbitration. Here, the Court should dismiss Breiding's claims against Credit One because those claims are plainly

governed by the Arbitration Agreement and may be resolved by arbitration.  *See, e.g.*, *Woolridge v. Securitas Security Servs. USA, Inc.*, 2006 WL 3424469, at *2 (E.D. Va. Nov. 21, 2006) (granting dismissal, rather than stay, in favor of arbitration where all claims against the defendant were clearly arbitrable and subject to arbitration); *Branchville Mach. Co. v. Agco Corp.*, 252 F. Supp. 2d 307, 312 (E.D. Va. 2003) (same).  In the alternative, however, the Court may issue a stay pending arbitration.  9 U.S.C. §§ 3, 4.

## CONCLUSION

For the foregoing reasons, Credit One respectfully requests that the Court (1) order the parties to binding arbitration pursuant to the express terms of the Arbitration Agreement; (2) dismiss Breiding's claim against Credit One; and (3) award such other and further relief as the Court deems appropriate.

Dated: June 1, 2021

Respectfully submitted,

**CREDIT ONE BANK, N.A.**

  /s/  
Elizabeth M. Thomas (Bar No. 12320)  
McGuireWoods LLP  
Tower Two-Sixty  
260 Forbes Avenue, Suite 1800  
Pittsburgh, PA 15222  
(412) 667-6000  
ethomas@mcguirewoods.com

*Counsel for Defendant Credit One Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, which will send notification of such filing to all counsel of record indicated on the Notice of Electronic Filing (NEF).

By: _____/s/Elizabeth M. Thomas_____

*Counsel for Defendant Credit One Bank, N.A.*